[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This condemnation appeal was referred to me as a state trial referee by Hennessey, J., together with another condemnation appeal involving the same parties, Docket No. CV-92-0508172S, in which the state had taken by eminent domain three 60 foot strips of the plaintiff's land bordering the south side of Cottage Grove Road in Bloomfield. In that case judgment was rendered for the defendant, because the court determined that the plaintiff's damages did not exceed the amount of the commissioner's assessment of damages pursuant to General Statutes 13a-73(b), which equalled the price set forth CT Page 4161 in a repurchase agreement that the state had made with the plaintiff's predecessors in title. That agreement did not affect the additional land taken by the state from the plaintiff that is the subject of this appeal.
The property taken from the plaintiff in this case affects the office building lot situated on the southwest corner of Cottage Grove Road and West Lane and also the lot for apartment building #1, on the southeast corner of Cottage Grove Road and East Lane. These takings will be discussed separately although they are included in one condemnation notice filed on September 4, 1991.
I. Office Building
The commissioner made the following acquisitions on the office building property, which comprised 4.36 acres before this condemnation:
(1) A parcel of 0.03 acre with 115 feet of frontage on West Street located at the southeast corner of the office property, which was taken in fee; (2) a right to reconstruct a driveway within an area of 0.51 acre; (3) a right to grade an area of 0.130 acre adjacent to the reconstructed driveway; (4) a right to install a sedimentation control system of 700 linear feet along the new highway line and the limits of the area to be graded.
The plaintiff's appraiser, Peter Marsele, estimated the damages to the office building property at $3,000. The estimate of damage is based wholly on the loss of the 0.03 acre taken in fee and makes no allowance for the other rights acquired on the property. The 0.03 acre equals 1,307 square feet, which Marsele multiplied by $2.00 per square foot, his unit price for the land before and after the taking, to obtain a value of $2,614 for the land taken. Implicitly he concluded that the rights to grade, to reconstruct the driveway, and to control sedimentation would have no harmful impact on the property. The $2.00 per square foot unit value is the same figure that Marsele arrived at as the after-taking value of the office building land in No. CV-92-0508172S, his valuation of the land before that taking having been $2.57 per square foot. His "rounding" of $2,614 to $3,000 results in an addition of $386 to the damages CT Page 4162 estimated. (Ex. B pp. 9-10, 13).
The state's appraiser, John Manfreda, estimated the damages from the taking of the 0.03 acre to be $4,200, basing this figure wholly on the value of the land taken at his unit price of $140,000 per acre. His value per square foot is $3.21, substantially higher than Marsele's unit values of $2.00 per square foot before this condemnation and $2.57 per square foot before the taking of the 60 foot strip in No. CV-92-0508172S. He also concluded that no other damages had resulted to the office building property. (Ex. 6, pp. 1-2, 5).
The court agrees with both appraisers that the only damage to the office building property is the loss of 0.03 acre taken in fee and that the other rights acquired will have no adverse impact. The court finds, however, that the unit value is $2.20 per square foot, the same figure the court found to be the unit value of the office land taken in No. CV-92-0508172S. Applying this unit value to the 1,307 square feet (0.03 acre) taken results in a finding of $2,875 damages with respect to the office building property.
II. Apartment Building # 1
The commissioner made the following acquisitions on the 1.162 acre parcel of land allocated to building #1, a two story brick apartment building containing twelve residential apartments, which is part of an apartment complex owned by the plaintiff with 12 additional apartment buildings: (1) a full and perpetual drainage easement approximately 50 feet wide located within an area of 0.063 acre extending southwesterly from Cottage Grove Road along the banks of an existing stream, Filley Brook; (2) a full and perpetual easement to slope for support of the widened Cottage Grove Road within an area of 0.070 acre adjoining the drainage right of way; and (3) a full and perpetual easement to relocate the channel of Filley Brook, place riprap and remove, use or retain excavated material within an area of 0.032 acre. The total area encumbered by the easements, which are contiguous, is 0.165 acre.
Marsele, the plaintiff's appraiser, concluded that CT Page 4163 the taking of easements and rights on the building #1 property had lowered its value by $211,000, of which $51,000 is attributable to a reduction in the unit value of the land (1.162 acres) from $2.50 to $1.50 per square foot and $160,000 to a reduction in rental income (Ex. B, pp. 7-8, 11-12, 14; Ex. 23). The basis for this conclusion is the destruction of a stand of white pine trees within the area of the drainage right of way and the easement to slope for support of the reconstructed highway. Marsele also opined that the box culvert and riprap to be placed in the channel of Filley Brook would detract from the bucolic setting of the brook in its natural state, despite their benefit in reducing erosion of the land. The trees, which are shown in an area designated "white pines" on exhibit A2, were planted along the southwesterly bank of Filley Brook and, after the removal of the white pines in the 60 foot strip taken by the state for widening Cottage Grove Road, would have provided some screening for building #1, affording some protection of privacy and enhancing its appearance.
Manfreda, the state's appraiser, concluded that the three permanent easements, which affect a total 0.165 acre, reduced the value of that acreage by 50 percent, but had no adverse consequences to the remainder of the land or to the apartment building. (Ex. 6, pp. 4-5). He estimated the damages from the taking of the easements to be $6,600, the product obtained by multiplying the total easement area (0.165 acre) by one half of his unit value per acre of $80,000. (Ex. 6, p. 4). He testified that, based on his observations of the property when he visited it before the condemnation date, there were very few pine trees in the area affected by the easements, although there was some shrubbery, which had no significant value. He made no allowance for any damages to the land outside the easement area or to the apartment building.
William Bonaminio, a landscape designer for the department of transportation, testified that there were no white pine trees in the easement areas when he visited the site before construction began. He also proposed a landscaping plan involving the planting of red maple and eastern white pine trees that would create a more effective screen in front of building #1 at an estimated cost of $9,914. (Ex. 11, 12, 13, 14). CT Page 4164
Despite the testimony of Bonaminio that before the condemnation there were no white pines within the 0.165 acre subject to the permanent easements, the court finds that there were at least some white pine trees there prior to the taking of the easements. The taking map (Ex. A2) plainly shows a balloon labeled "white pines" extending southeasterly from the taking line of the widened Cottage Grove Road along the southwest bank of Filley Brook. The most easterly portion of this designation for white pine trees extends into the drainage right of way areas marked on the map. (Ex. A2). The photographs of the premises taken by Bonaminio on November 8, 1990, prior to the condemnation, show the presence of some trees resembling white pines within the "drainage area" and "relocate channel area." (Ex. 6, p. 13, Photos #8 and #9).
The court is not persuaded, however, that, after the removal of the trees within the 60 foot strip taken for widening Cottage Grove Road, the trees remaining in the front of building #1 within the easement areas would have provided a very effective privacy barrier, although they would have improved the appearance of the property. The taking map indicates that the entire stand of white pines in front of building #1 measures approximately 80 feet east to west as compared to 170 feet for the building itself. The string of these trees within the permanent easement area measures only about 40 feet in length.
In No. CV-92-0508172S the court found severance damages for the taking of the 60 foot strip and the destruction of the broad whitepine belt, which extended across the entire front of the building #1 property, a distance of approximately 250 feet, except for breaks where Filley Brook and electrical service wires crossed. Those damages were based on a finding of a projected loss of rental income for the front apartments of building #1 of $806 annually, which when capitalized at 11.1 percent, would result in severance damages of $7,261. The main reason for finding such a probable loss of rental income for the front apartments was the higher level of highway noise that occupants of those apartments would experience because the highway would be 60 feet CT Page 4165 closer than before the condemnation. The removal of the privacy screen provided by the white pines within the 60 foot strip was also a factor in that determination, since they have helped to reduce the highway noise, largely concealed the apartments from Cottage Grove Road, and also greatly enhanced the aesthetics of the property.
In the present case the impact of the loss of the trees within the easement areas would have only a minimal effect with respect to the level of highway noise and would not have nearly so great an impact on privacy and aesthetics as the removal of the trees in the 60 foot strip has had. Furthermore, if the plaintiff were to adopt the landscaping plan proposed by Bonaminio, which would provide a screen across the entire front of building #1, at a cost of $9,914, the privacy and appearance of the property would be enhanced to a greater degree than before removal of the trees in the easement areas, which screened only a small portion of the property.
The court concludes that the removal of the trees in the easement area will probably not have any effect on the rental income from building #1 or on the value of the land allocated to that property outside the easement areas. Thus the court is not persuaded that any severance damages should be allowed for the portion of the property not subject to the easements, except for the cost of landscaping the area by planting new trees as proposed by Bonaminio. The plaintiff has not challenged the reasonableness of his cost estimate of $9,914 and has not offered any alternative plan or cost estimate.
The court finds that the methodology followed by Manfreda in appraising the damages to the land within the easement areas, reducing the value of the land subject to the easements by one half, is reasonable. His unit value of $80,000 per acre ($1.84 per square foot), however, is low. In No. CV-92-0508172, the court found the value of the apartment land to be $2.00 per square foot for the reasons set forth in its memorandum of decision. Since the evidence on land values in this case is similar, the court will use that figure in calculating the damages resulting from the easements as follows: CT Page 4166
7,187 s.f. (0.165 acre) X $2.00 per s.f. X 1/2 = $7,187
Cost of new tree plantings = $9,914 ----- $17,101
 III
A summary of the damages found is as follows:
Office building property $2,875 Apartment building property $17,101 ------ Total $19,976
It is ordered that judgment enter for the plaintiff to recover of the defendant $19,976 damages, a sum $9,176 greater than the $10,800 assessed by the commissioner as damages for the taking. Interest at a rate that is reasonable and just pursuant to General Statutes 37-3c is also awarded on the amount in excess of the $10,800 assessed by the commissioner, because that $10,800 has been "available for withdrawal by the condemnee" since the date of condemnation. If the parties are unable to agree upon the amount of interest, the court will hold an additional hearing for that purpose. The plaintiff is also entitled to recover its costs pursuant to General Statutes 130-77, but without an appraiser's fee, because there was no charge for the services of its appraiser.
David M. Shea State Trial Referee